Curia, per Johnston, Chancellor.
It is not doubted, that Michael Birch was entitled, to the slave, Cressy, and that hiii widow, Dorcas, who alone qualified as executor of his will, was vested with the legal title of her testator, not only as to this slave, but as to Abbey, (or Sabina,) who was born before the testator’s death.
Mrs. Birch conveyed these two slaves; among others, to the children of James A. Pearson, by deed, dated the 4th of Oct. 1808. In this deed, she does not profess to make the ,conveyance as Exec’x., but if she was in fact, Exec’x. at the time, it has been sufficiently settled, that, notwithstanding her omission to recite her authority, her act shall be refer-ed to every power of disposition, with which she was clothed. Her power as Exec’x., to dispose of the property of her testator, was more extensive, than is now allowed to Exec’xs., under the Act of 1824. At the date of her deed, a conveyance by an executor vested the title in the grantee ; liable only to the equity of the legatees, to follow the *287 property in bis hands, and subject it to the trusts of the will, provided he purchased with notice of the trusts, or took as a mere volunteer. In this case, the children of Pearson took as volunteers ; but this can make no difference here, because, in fact, the legatees have never sought to affect them, with a constructive trust; their remedy, in that respect, is now barred, and the title of Pearson’s children is perfect in equity, as well as in law. If therefore, Mrs. Birch was competent, at the date of her deed, to make the conveyance, there is no doubt that it conferred upon the children of Pearson, a full title to Abbey, who was included in the instrument, by the name of Sabina. There is some reason, however, to doubt whether Mrs. Birch was not, at the time, a married woman. Her husband’s will is dated in the latter part of 1807, and was not admitted to probate, until some short time after the deed was executed. There is no positive evidence in the case, as to the time of Birch’s death. But the plaintiff, Mrs. Holladay, who was a subscribing witness to the instrument, was examined as a witness, for the defendant in the case, and stated that it was executed before Birch’s death. This is the only evidence in the case; and, if the witness was credible, it establishes, not only that Mrs. Birch was not executrix, when she made the deed, the testator being still alive, but that she was a feme covert, and that the instrument was, therefore, an absolute nullity. But whether we take the deed to have been good, and to have vested a title in Pearson’s children, or to have been void, and that the title remained unaffected, and upon the death of Birch, accrued to the executrix, it appears to us, can make no sort of difference in the case. Supposing the title to have been in the executrix, independently of the incapacity of the defendant to shield himself under a title, which has never been practically enforced against him — upon which I shall say more hereafter — it is sufficient to observe, that the Court is satisfied, that that title was barred by the long-possession of the defendant’s intestate. The intestate obtained possession of Abbey, from James A. Pearson, who had no sort of title to her. The supposition that she was placed, in the intestate’s hands, in lieu of his wife’s usufructuary, interest in Birch’s estate, is entirely conjectural. We have *288 no traces of any such bargain, nor of Pearson’s authority to make it. There is no evidence of any privity, between the executrix and the defendant’s intestate, in the transfer which was made by Pearson, to the latter. We have the bare fact, that the possession was changed; but no knowledge of the terms upon which this was done. The legal conclusion must be, that the intestate obtained .possession for himself, and held for himself. And as the ■executrix, in whom we have supposed the title to be, did ■not disturb him until she was barred by the statute, we must hold his title to have been perfected. Then, supposing the title to have been in the children of Pearson, who, on account of their minority, were not barred in the intestate’s lifetime, the Court is of opinion, that it is not competent for the defendant to set up this title against his cestui que trusts. His intestate died in the actual possession of the property ; and the defendant came into possession in his right. The title which he now sets up as paramount, has never been enforced against him. And if he has lost the property entrusted to him, as administrator, it was not by virtue of that title, but by his own negligence. If he had been evicted, that would have been a good defence. But it would be against justice, as well as against law, to allow a trustee, when called upon to deliver the thing confided to him, or account for it, to except to the title under which he obtained possession, and hunt up an outstanding title, in order to show, not that he had been, but that he might have been, thereby deprived of the trust property. The negro was sold as the property of Pearson, to whom the defendant as administrator, had hired her. Against Pearson, his bailee,' he had an indubitable right of recovery; without the possibility of his setting up any other title. The rule is clear, that a bailee cannot resist the title of his bailor. The defendant had a good right of recovery, also, against the sheriff and against Nelson, to whom the sheriff sold the negro. The one levied on Pearson’s right, and the other bought it: and without deciding that the sheriff or the purchaser, might not have gone further than Pearson, and set up a title in Pearson himself, which the latter, as bailee, could not do ; it is very clear, ■ that the administrator had a *289 light to recover against all the world, but the real owner; which, upon the supposition, that the title was in Pearson’s children, would have insured his remedy against either of these two. Having lost the property entrusted to him, by his omission to pursue these remedies, and having shown no reason why he did not resort to them, he must account for the property, at its value, at the time of the loss sustained, with interest thereon.
And it is ordered, that the circuit decree be modified, accordingly.
J. JOHNSTON.